**Redacted Version**

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

| | |
|---|---|
| TRAX INTERNATIONAL CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 1:26-cv-00796 |
| THE UNITED STATES, ) | Judge Carolyn N. Lerner |
| ) | |
| Defendant, ) | ▇▇▇▇▇▇▇▇▇▇▇ |
| ) | |
| and ) | |
| ) | |
| SOUTHWEST RANGE SERVICES, LLC, ) | |
| ) | |
| Defendant-Intervenor. ) | |
| ) | |

**DEFENDANT-INTERVENOR SOUTHWEST RANGE SERVICES, LLC'S RESPONSE TO PLAINTIFF'S MOTION TO COMPLETE THE ADMINISTRATIVE RECORD**

*Of Counsel:*

Stuart W. Turner
Thomas A. Pettit
Kristina Lorch
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001

Craig A. Holman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Phone: (202) 942-5722
Email: craig.holman@arnoldporter.com

*Attorney of Record for Southwest Range Services, LLC*

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     QUESTIONS PRESENTED....................................................................................... 2

III.    STANDARD OF REVIEW ....................................................................................... 2

IV.     ARGUMENT ............................................................................................................ 3

        A.      The Administrative Record Is Complete. ................................................... 5

        B.      TRAX Has Provided No Clear Evidence That AI Played Any Role In The
                WSMR Evaluation. ................................................................................... 10

V.      CONCLUSION....................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

BHB Ltd. P'ship v. United States,
  147 Fed. Cl. 226 (2020) ...........................................................................2, 3, 5

Bowhead Enter., Sci. & Tech., LLC v. United States,
  179 Fed. Cl. 1 (2025) ......................................................................................11

CAN Softtech, Inc. v. United States,
  175 Fed. Cl. 74 (2025) ...............................................................................9, 10

Citizens to Preserve Overton Park, Inc. v. Volpe,
  401 U.S. 402 (1971)............................................................................................9

Competitive Innovations, LLC v. United States,
  175 Fed. Cl. 296 (2025) ...............................................................................5, 6

Hager Dev. Grp., LLC v. United States,
  No. 20-819, 2020 WL 4529817 (Fed. Cl. Aug. 5, 2020)...........................5, 8

Joint Venture of Comint Sys. Corp. v. United States,
  100 Fed. Cl. 159 (2011) ............................................................................. passim

mLINQS, LLC v. United States,
  No. 22-1351, 2023 WL 2366654 (Fed. Cl. Mar. 6, 2023).........................11

Oak Grove Techs., LLC v. United States,
  155 Fed. Cl. 84 (2021) ......................................................................................6

Oak Grove Techs., LLC v. United States,
  156 Fed. Cl. 594 (2021) ....................................................................................6

Point Blank Enters., Inc. v. United States,
  No. 23-913, 2023 WL 8785170 (Fed. Cl. Aug. 9, 2023)........................1, 3, 9

Syneren Techs. Corp. v. United States,
  166 F.4th 1040 (Fed. Cir. 2026) .....................................................................11

United States v. Hayes,
  763 F.Supp.3d 1054 (E.D. Cal. Jan. 17, 2025) ...........................................11

Walter O. Boswell Mem'l Hosp. v. Heckler,
  749 F.2d 788 (D.C. Cir. 1984)...........................................................................8

*Westwind Partners, LLP v. United States,*
  No. 24-1504C, 2025 WL 985640 (Fed. Cl. Mar. 21, 2025) .......................................................8

Defendant-Intervenor Southwest Range Services, LLC ("SRS"), by undersigned counsel, hereby respectfully submits this response to the Motion to Complete the Administrative Record (the "Motion") filed by Plaintiff TRAX International Corporation ("TRAX").

## I.　　INTRODUCTION

TRAX's motion fails at the first gate, as TRAX cannot demonstrate that the Agency decisionmakers used the documents TRAX now demands the Agency must include in the administrative record. The Declaration of ▮▮▮▮▮▮ stated unmistakably that artificial intelligence ("AI") did not contribute to the evaluation of the offerors in the WSMR procurement, and that the extent of the use of AI was a failed experiment with AI processing of the proposal of third-place offeror ▮▮▮▮▮▮. The Source Selection Evaluation Board ("SSEB") assessed the output of this limited experiment and deemed the output and AI unusable. After this failure, the Agency shelved the AI, and the AI played no further role at any point in the evaluation of the offerors or the source selection decision. ▮▮▮ Declaration at ¶¶ 3-5.)

Such documents fall short of the standard requiring completion of the Administrative Record, which allows for addition of documents "relevant to the challenged agency decision and [that] were considered by the relevant agency decisionmakers, yet not included in the record." *Point Blank Enters., Inc. v. United States*, No. 23-913, 2023 WL 8785170, at *3 (Fed. Cl. Aug. 9, 2023), citing *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 494 (2019). The incomplete ▮▮▮ AI outputs have no relevance to the decision to award the contract to SRS and not to TRAX, and the Army decisionmaker did not consider any AI assessment, much less an AI assessment of the protester or the awardee.

TRAX nevertheless insists that the Agency must include even documents produced, but never considered by or relevant to the Army's decision. TRAX bases this assertion on a misapplication of several cases to suggest a disjunctive test whereby an agency must include in

the administrative record anything the agency generates during the course of a procurement. But this overbroad standard misstates the cited cases, and ignores the baseline principle animating even the cases cited by TRAX that administrative law requires completion only where omission of the documents would frustrate judicial review of the positions taken by the parties. *See Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 168-69 (2011). The "unusable" █████ AI output has no relevance to any position taken by TRAX, and omission of the documents will not affect the Court's review of TRAX's protest.

Finally, TRAX has not provided any evidence for this challenge beyond the hunch underpinning TRAX's assertion that the Agency employed AI in the evaluation of the TRAX proposal, notwithstanding Agency assertions (sworn) to the contrary. Without clear and convincing evidence, the Court must reject this attack on the good faith of Mr. █████ and the Agency, and with it, TRAX's baseless motion.

## II.    QUESTIONS PRESENTED

1.    Whether the unused AI materials related to a third party proposal have relevance to the protest such that they are necessary to complete the Administrative Record.

2.    Whether an agency must include in the administrative record documents "generated" by an agency in the course of an evaluation which play no role in any agency decision and have no relevance to any of a protester's claims.

3.    Whether TRAX has provided "clear evidence" that AI influenced (or played any role in) the WSMR award decision.

## III.    STANDARD OF REVIEW

By a motion to "complete" the record, "a party seeks to add documents that are relevant to the agency decision and were considered by the agency in reaching the decision." *BHB Ltd. P'ship*

*v. United States*, 147 Fed. Cl. 226, 229 (2020) (denying motion to complete). The Court considers the Government's designation of the Administrative Record as complete to be "presumptively correct" and requires "clear evidence" of material considered, but excluded, to overcome that presumption. *See id.* A court will only grant a motion to complete the record to add to the record "omitted documents that the agency did consider in making its decision." *Advanced Tech. Sys. Co. v. United States*, No. 23-1000, 2023 WL 8805707, at *3 (Fed. Cl. Oct. 4, 2023).

## IV.    ARGUMENT

TRAX cannot prove either essential element of any Motion to Complete, *i.e.* that the omitted documents have relevance "to the challenged agency decision and were considered by the relevant agency decisionmakers, yet not included in the record." *Point Blank Enters., Inc.*, 2023 WL 8785170 at *3, citing *Poplar Point*, 145 Fed. Cl. at 494. TRAX cannot demonstrate that the requested AI documents relate to any aspect of the challenged decision, and TRAX cannot show that the relevant Agency decisionmakers considered the supposed AI documents in connection with the decision to award to SRS.

TRAX provides no satisfactory explanation as to why the AI documents described by the Army would "complete" the record of the Agency award decision, which TRAX challenges in its protest. TRAX's Motion never addresses the central question – why do the AI documents identified by the Army matter to this protest? As related to the AI, Mr. ▮▮▮▮ declaration establishes that the SSEB only saw a slide deck regarding "Offeror A," *i.e.* neither SRS or TRAX. (▮▮▮▮ Declaration at ¶ 4.) Immediately upon viewing these AI related slides regarding▮▮▮▮, the SSEB rejected further use of the AI tool, as the outputs regarding ▮▮▮▮ "were not useable and could not be used as a reliable tool." (▮▮▮▮ Declaration at ¶ 4.) As confirmed by ▮▮▮▮, the Army did not review or use any AI outputs in the assessments of TRAX and SRS:

3

We did not see any AI outputs for Offerors B and C. Additionally, the SSEB did not independently use, test, or see any AI generated information related to Offerors B and C. At no point in time in the evaluations of offers B or C did the SSEB use, rely on or even consult AI tools during the evaluation of the offer[o]rs' proposal.

(*Id.*)

Offer A was ███████. (AR4384, SSEB Report at 10.) As stated by the Source Selection Authority in the Source Selection Decision, ████ did not play a material role in the WSMR award decision, as the Agency ████████████████████ ████████████:

████████████████████████████

(AR 5123, Source Selection Document at 21.) The Army confirmed the irrelevance of ████ in its Price Negotiation Memorandum:

████████████████████████████

(AR 5363, Price Negotiation Memorandum at 63 (Source Selection Decision).)

TRAX parses ███████ words to imply variously that the AI evaluation of ████ occurred before, or perhaps after, the evaluation of ████'s proposal by the SSEB members. (TRAX Motion at 5.) But it is not clear why this matters. The AI documents, to the extent they reflect the evaluation at all, relate only to the evaluation of ████. TRAX insists that the Agency must include the AI documents because the AI documents reflect "part of the process that the Army followed in evaluating proposals and making its source selection decision, and the administrative record is incomplete without them." (TRAX Motion at 5.) This claim is disingenuous, however.

The documents do not relate to TRAX's claims or to any aspect of the award decision. TRAX instead wishes to rummage through the preliminary, unused AI outputs in the apparent

████████████████████████████

hopes of turning this case into some sort of AI spectacle despite the unmistakable evidence provided by ▮▮▮▮ that the Agency decisionmaker (the SSA) did not use AI or any AI documents in making the decisions TRAX purports to challenge by its bid protest. Likewise, ▮▮

▮▮ confirms that the SSEB saw only very limited output related to a third offeror ▮▮ irrelevant to this protest and immediately decided to reject the output and shelve the tool. TRAX cites *Comint Sys. Corp.*, 100 Fed. Cl. at 168-69 and *Hager Dev. Grp., LLC v. United States*, No. 20-819, 2020 WL 4529817, (Fed. Cl. Aug. 5, 2020) for the principle that the record must include documents that provide "meaningful context" for the agency's decision. (TRAX Motion at 3.) But TRAX's effort to manufacture such a connection fails. The disregarded partial ▮▮-related AI materials provide no context for the evaluations and decisions TRAX has challenged, meaningful or otherwise. The Court should deny TRAX's Motion.

## A.     The Administrative Record Is Complete.

TRAX bases its Motion upon the assertion that any document "generated" by an agency during the course of an evaluation constitutes part of "the process of evaluation," and therefore the Agency must include such a document in the Administrative Record. (TRAX Motion at 2 ("The AI 'outputs' are necessary to complete the record because they were 'generated' by the Army specifically for this procurement"), citing *Competitive Innovations, LLC v. United States*, 175 Fed. Cl. 296, 303 (2025). TRAX bases this assertion on a "disjunctive" test supposedly set forth in *Competitive Innovations, LLC* and *BHB Ltd. P'ship*, 147 Fed. Cl. at 229 . TRAX claims that these cases mandate inclusion of any material either generated or considered by the Agency. (TRAX Motion at 1-3.) However, TRAX misstates the holding in these cases.

In *BHB Ltd. P'ship*, the court made clear that the Agency's consideration of the material makes inclusion mandatory, not mere generation: "By motion to complete the record, a party seeks

to add documents that are relevant to the challenged agency decision <u>and were considered by the agency in reaching its decision.</u>" *BHB Ltd. P'ship*, 2020 WL 1240916 at * 2 (emphasis added). *BHB Ltd. P'Ship* establishes no "disjunctive" test, but confirms that "[t]he primary focus of the court's AR review in bid protest cases is to examine the material before the agency <u>when it made its decision.</u>" *Id.* at *4 (emphasis added). Regarding materials that an agency "generated" (stated disjunctively), the case states only that the court "may" order the inclusion of such documents. *Id.* Regarding *Competitive Innovations, LLC*, that case quotes and relies on *BHB Ltd. P'Ship* and goes no further. In fact, *Competitive Innovations, LLC* clarifies that "[c]ompletion is appropriate if the agency omits information that was generated <u>and</u> considered as part of the procurement." *Competitive Innovations, LLC*, 175 Fed. Cl. at 303 (emphasis added).

TRAX further relies on the discussion by Chief Judge Solomson in *Oak Grove Techs., LLC v. United States*, 156 Fed. Cl. 594 (2021). (TRAX Motion at 2-3.) The circumstances of *Oak Grove*, however, fundamentally differ from those at issue here. In *Oak Grove*, the court criticized the government for withholding two formal procurement documents from the initial administrative record. The first was a document from the agency's responsibility evaluation that directly contradicted the agency's assertion to the court that an intervening offeror was a responsible awardee, thus eliminating the protester's standing. *Oak Grove*, 156 Fed. Cl. at 604-05. Second, the court criticized the government for for withholding a document recording the agency's termination of the SSEB chairman during the evaluation despite the protester's specific allegations of bias against the chairman. *See Oak Grove Techs., LLC v. United States*, 155 Fed. Cl. 84, 117 (2021). In short, *Oak Grove* involved formal procurement documents relevant to the issues before the court. This case differs materially. As stated by ███████████ the AI outputs at issue played no role in any aspect of the Army's actual determinations, scoring, or evaluation. The AI outputs

6

relate only to ███, and the preliminary and rejected AI review of ███ was not an element of any actual decision by any actual Army decisionmaker.

Even if the facts in *Oak Grove* were similar or relevant to the circumstances here (which they are not), TRAX has misstated the standard applied in that case. In *Oak Grove*, Chief Judge Solomson stated that "[a] proper administrative record 'is not limited to documents relevant only to the merits of the agency's decision' but also 'includes documents and materials relevant *to the process* of making the agency's decision." *Id.* at 600 (italics in original, underline added). Chief Judge Solomson derives this standard largely from DOJ's "Guidance to Federal Agencies on Compiling the Administrative Record." *Id.* at 599-601. The cited DOJ guide contradicts TRAX's position here, demonstrating TRAX's misinterpretation of *Oak Grove*. The DOJ guide requires inclusion of "all documents and materials directly or indirectly considered by the agency decision maker in making the challenged decision." Guidance to Federal Agencies on Compiling the Administrative Record 1 (Jan. 1999).[1] As noted *supra*, the disregarded AI evaluation of ███ has no relevance to the challenged decision awarding the WSMR contract to SRS over TRAX, as the SSA confirmed ████████████████. (AR 5123, Source Selection Document at 21.)

TRAX also cites *Comint Sys. Corp.* for its supposed "disjunctive standard" mandating inclusion of any document "generated" by an agency during the course of a procurement, whether or not it relates to any aspect of the challenged decision. (TRAX Motion at 2, 3, citing *Comint Sys. Corp.*, 100 Fed. Cl. at 168-69.) This assertion, however, disregards the clear statement in *Comint Sys. Corp.* that "the essential question that courts must ask is whether omission of extra-

---

[1]  Available at https://www.spd.usace.army.mil/Portals/13/docs/regulatory/qmsref/eis/DOJ%20 Guidance.pdf.

record evidence would 'frustrate effective judicial review'" of the protest, "to ensure that the position of both parties is fully understood." *Id.* at 168. The AI outputs regarding the ██████ proposal have nothing to do with TRAX's claims, and omission of these documents will have no effect whatsoever on the Court's consideration of TRAX's protest positions.

In a similar vein, TRAX cites *Hager Dev. Grp.*, noting that the court in that case upheld a completion motion seeking inclusion of expert reports providing "suggestions" to SBA decisionmakers to guide determinations of whether offerors would receive Certificates of Competency and be permitted to proceed in the competition. (TRAX Motion at 3, citing *Hager Dev. Grp.*, 2020 WL 4529817 at *4.) In *Hager Dev. Grp.*, the SBA decisionmakers reviewed reports for all offerors during the course of rendering the critical decisions that formed the direct subject of the protester's challenge. *Hager Dev. Grp.*, 2020 WL 4529817 at *4. In the instant case, however, the AI outputs relate only to one non-party offeror, have nothing to do with any of TRAX's allegations, and no evidence exists that the AI outputs affected the evaluation of any Army decisionmaker at any level.

TRAX's suggestion that the record should include documents merely generated but not considered by the Agency is not the law. A court will grant a motion to complete the record in order to add to the record "omitted documents that the agency did consider in making its decision." *Advanced Tech. Sys.*, 2023 WL 8805707 at *3 (emphasis added). Courts have emphasized that the record is measured by documents relevant to the decisionmaker at the time of decision, not by the universe of documents generated at any point in the evaluation process. A reviewing court "should have before it neither more nor less information than did the agency when it made its decision." *Westwind Partners, LLP v. United States*, No. 24-1504C, 2025 WL 985640, at *2 (Fed. Cl. Mar. 21, 2025) (emphasis added), citing *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d

788, 792 (D.C. Cir. 1984). The court in *Boswell* cited the United States Supreme Court on this point, emphasizing the timing element in *Citizens to Preserve Overton Park, Inc. v. Volpe*: "[R]eview is to be based on the *full* administrative record that was before the Secretary *at the time* he made his decision." 401 U.S. 402, 420 (1971) (emphasis added by D.C. Circuit). Contrary to TRAX's assertions, neither *Competitive Innovations, LLC* nor *Oak Grove Techs* somehow revised this clear standard.[2]

To grant any motion to complete filed by TRAX, this Court must find that the omitted documents were "relevant to the challenged agency decision and were considered by the relevant agency decisionmakers, yet not included in the record." *Point Blank Enters., Inc.*, 2023 WL 8785170 at \*3, citing *Poplar Point*, 145 Fed. Cl. at 494. TRAX must provide "clear evidence" that information "generated or considered" during the procurement was used "during the procurement and decisionmaking process." *CAN Softtech, Inc. v. United States*, 175 Fed. Cl. 74, 77 (2025), quoting *Poplar Point*, 145 Fed. Cl. at 494).

As described in the ▮▮▮▮ Declaration, the failed AI model did not form part of the evaluation record presented to the SSA, and had no relevance to the challenged decision. The Agency has certified that the Court has the full and complete record of the challenged evaluation, including the complete record of evaluations and proposals from SRS and TRAX, and the absence

---

[2] TRAX also cites *Comint Sys. Corp.*, 100 Fed. Cl. at 168-69 for its supposed "disjunctive standard" mandating inclusion of any document "generated" by an agency during the course of a procurement, whether or not it relates to any aspect of the challenged decision. (TRAX Motion at 2,3.) This assertion, however, disregards the clear statement in *Comint Sys. Corp.* that "the essential question that courts must ask is whether omission of extra-record evidence would 'frustrate effective judicial review'" of the protest, "to ensure that the position of both parties is fully understood." *Id.* at 168. The AI outputs regarding the ▮▮▮▮ proposal have nothing to do with TRAX's claims, and omission of these documents will have no effect whatsoever on the Court's consideration of TRAX's protest.

of the incomplete preliminary AI outputs does not somehow frustrate this Court's review of the TRAX protest. The Court should deny TRAX's Motion.[3]

### B.    TRAX Has Provided No Clear Evidence That AI Played Any Role In The WSMR Evaluation.

To support any demand to "complete" the record, TRAX also must provide "clear evidence" that information "generated or considered" during the procurement was used "during the procurement and decisionmaking process." *CAN Softtech, Inc.*, 175 Fed. Cl. at 77 (quoting *Poplar Point*, 145 Fed. Cl. at 494). As described in detail in the Declaration of ██████████ the documents recording the incomplete ██████ AI effort did not become part of the evaluation record presented to the SSA for decision. It reflected a partial tool test on a third party proposal that the Agency never applied to the proposals of TRAX or SRS, and that played no role in the strengths and weaknesses assigned to those proposals, or to the eventual actual decision to award the contract to SRS. ██████████ declaration describes only a preliminary experiment that came to a dead end, was rejected, and played no role in the evaluation material presented to the agency decisionmaker.

TRAX nevertheless claims that "the Army's use of AI did bleed into the evaluation materials that were provided to the Source Selection Authority," and that a weakness assigned to TRAX in the SSEB Report was, in fact, generated by AI. (TRAX Motion at 5-7.) In support of this, TRAX seeks to demonstrate what the Army has already acknowledged, *i.e.* that the Agency assigned the weakness to TRAX under Subfactor 1B, Continuity of Operations in error. What TRAX's Motion lacks, however, is any evidence that the error resulted from AI, versus a human

---

[3] TRAX also claims that "[t]o the extent that the AI documents contradict the SSEB's findings, that cannot be a basis on which to exclude them from the Administrative Record." (TRAX Motion at 4, citing *Comint Sys. Corp.*, 100 Fed. Cl. at 167.) TRAX's invocation of the AI output as a kind of dissenting minority report is unsupported by the record. ██████████ made clear that the AI output was rejected because it was "not useable and could not be used as a reliable tool," not because it disagreed with the SSEB's conclusions.

evaluator. TRAX claims that because the error involved "incorrect citations to pages in TRAX's proposal that have no bearing on the evaluation factor at issue, and that conflate entirely separate aspects of the evaluation," the record bears the "hallmarks" of AI, citing *United States v. Hayes*, 763 F.Supp.3d 1054, 1064-65 (E.D. Cal. Jan. 17, 2025). The *Hayes* case, however, has no application, as it relates to the submission of a legal brief to the court that contains imaginary legal citations, with made up case names and fictional holdings in support of the Plaintiff's position. Even under TRAX's account of the evaluation error, nothing was invented, rather the Agency evaluator apparently mistakenly transposed two elements of the TRAX proposal. The error identified by TRAX could just as accurately be said to bear the "hallmarks" of a human mistake.

Finally, regardless of the inapplicability of *United States v. Hayes*, the Court should deny the TRAX Motion because it challenges the veracity and good faith of SSEB Chair ███████ and the Agency without evidence. ███████ stated unmistakably in his declaration that "[a]t no point in time in the evaluations of offers B or C did the SSEB use, rely on or even consult AI tools during the evaluation of the offerors' proposal." (███ Decl. at ¶ 4.) TRAX provides no evidence to support its accusation against ███████ except its own hunch that the weakness bears vague "hallmarks" of AI use. (TRAX Motion at 7.) Under the law, such inferences and speculation cannot support any finding of dishonesty or bad faith by ███████, whose good faith the law presumes. *See Bowhead Enter., Sci. & Tech., LLC v. United States*, 179 Fed. Cl. 1, 14 (2025) (Court denies protest and declines "to assume—without proof" a false statement). *See also Syneren Techs. Corp. v. United States*, 166 F.4th 1040, 1046 (Fed. Cir. 2026) (protester's "unsupported argument" cannot overcome "presumption of good faith on behalf of the government."); *mLINQS, LLC v. United States*, No. 22-1351, 2023 WL 2366654, at *21 (Fed. Cl. Mar. 6, 2023) ("mere bland inferences or unsubstantiated speculation are not enough to induce this

court to abandon 'the long-accepted presumption that public officials act in good faith, and with integrity in the performance of their duties'"), quoting *Gregory Lumber Co. v. United States*, 11 Cl. Ct. 489, 501 (1986), *aff'd*, 831 F.2d 305 (Fed. Cir. 1987), *cert. denied*, 484 U.S. 1061, 108 S. Ct. 1016, 98 L.Ed.2d 982 (1988).

TRAX has produced no evidence that the Agency employed AI in the evaluation of TRAX's proposal, and no evidence that the Agency has misrepresented what occurred as regards the non-use of AI in the evaluations of SRS and TRAX and the award decision to SRS. The Court should deny TRAX's Motion.

## V.    CONCLUSION

For the foregoing reasons, SRS respectfully requests that the Court deny TRAX's Motion to Complete the Administrative Record.

Dated:  June 26, 2026

*Of Counsel:*

Stuart W. Turner
Thomas A. Pettit
Kristina Lorch
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

/s/ Craig A. Holman
Craig A. Holman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Phone:  (202) 942-5722
Email:  craig.holman@arnoldporter.com

*Attorney of Record for Southwest Range Services, LLC*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of June 2026, I caused a true and correct copy of the foregoing Response to Plaintiff's Motion to Complete the Administrative Record to be served by e-mail on:

Daniel Hoffman
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
daniel.a.hoffman@usdoj.gov

*Counsel for Defendant*


Daniel P. Graham
McDermott Will & Schulte LLP
500 North Capitol Street, N.W.
Washington, D.C. 20001
dgraham@mcdermottlaw.com

*Counsel for Defendant-Intervenor*


/s/  Craig A. Holman