**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(BID PROTEST)**

TRAX INTERNATIONAL CORPORATION, )
                                         )

        Plaintiff,              )

                                         )

       v.                           )

                                         )   No. 26-796C

THE UNITED STATES,            )

                                       )   Judge Carolyn N. Lerner

        Defendant,         )

                                       )

and                                )

                                       )

SOUTHWEST RANGE SERVICES, LLC,  )

                                       )

        Defendant-Intervenor.    )

*Redacted Version*

**RESPONSE IN OPPOSITION TO TRAX'S**
**MOTION TO COMPLETE THE ADMINISTRATIVE RECORD**

The United States respectfully responds to the motion of plaintiff, Trax International Corporation (TRAX), to compel the production of documents to complete the record. ECF No. 28. The Court should deny TRAX's motion because the materials TRAX requests improperly supplement the administrative record, not complete it.

**INTRODUCTION**

TRAX filed a post-award bid protest challenging the Army's evaluation of proposals under Solicitation No. W51EW7-25-RA003 (the Solicitation or Request for Proposal (RFP)) for Mission Support Services (MSS) at White Sands Missile Range (WSMR). ECF No. 1, Compl. ¶ 1. TRAX alleges "the Army's evaluation and its decision to award the contract to [Southwest Range Services, LLC (SRS)] were arbitrary, capricious, an abuse of discretion, and not in accordance with law." Compl. p. 1. To support its unfounded allegations, TRAX is attempting to improperly supplement the administrative record with irrelevant documents. This Court should deny TRAX's attempt.

The Government has already made great effort to meet and confer to resolve TRAX's irrelevant, burdensome, and legally unsupported requests. Nonetheless, TRAX persists.

## STATEMENT OF FACTS

On May 23, 2025, the United States Army Mission and Installation Contracting Command (MICC) Theater Support Center (TSC) solicited negotiated RFPs for MSS at WSMR, pursuant to Solicitation No. W51EW7-25-RA003. AR1442.

At approximately the same time, May 2025, Army Contracting Command (ACC)-Detroit began testing an Army Artificial Intelligence (AI) platform called FAST TRACK. Declaration of ███████ Exhibit B, ¶ 4. The MICC TSC leadership tasked Mr. ███ with helping the developers evaluate their FAST TRACK AI tool. *Id.* After testing FAST TRACK on fictitious requirements documents, Mr. ███ began "assessing the output of the tool using real-world acquisitions." *Id.* at ¶ 5. Mr. ███ "was given clear instructions that none of the results generated from the tool would be used to inform the source selection evaluation boards for any real-world acquisition." *Id.* Mr. ███, who was not directed to test FAST TRACK on any specific procurements, but he decided to test it on Solicitation No. W51EW7-25-RA00, because of the temporal proximity. *Id.* at ¶¶ 4, 5.

Subsequently, Mr. ███ showed the Source Selection Evaluation Board (SSEB) FAST TRACK's analysis results for Offeror A – ███ – from his laptop.[1] Exhibit B, ¶ 5; Declaration of ███████, Exhibit A, ¶ 4.[2] The AI tool's output was not part of the contract file because SSEB "did not receive digital or physical copies of that output." Exhibit B, ¶ 5;

---

[1] Mr. ███ was showing the SSEB FAST TRACK's output "from [his] laptop" but he was projecting it for members of the SSEB. *See* Exhibit B, ¶ 5; Exhibit A, ¶ 4.

[2] Mr. ███ declaration was done under the penalty of perjury, as was Mr. ███. Exhibit A, ¶ 5; Exhibit B, ¶ 6.

Exhibit A, ¶ 4. When the SSEB viewed the AI tool's output the SSEB had already evaluated Offeror A. Exhibit B, ¶ 5; Exhibit A, ¶ 4. The SSEB concluded that the AI tool's results "were not useable and could not be used as a reliable tool" while Mr. ▆ concluded the tool "did not provide consistent output nor did it yield accurate results in every instance." Exhibit B, ¶ 5; Exhibit A, ¶ 4. The SSEB did not amend or change Offeror A's evaluations based on the AI tool.[3] Exhibit A, ¶ 4. Thereafter, the SSEB did not see any AI outputs for Offerors B (TRAX) or C (SRS). *See* Exhibit B, ¶ 5; Exhibit A, ¶ 4; ECF No. 28 at 2. Per Mr. ▆:

> [T]he SSEB did not independently use, test, or see any AI generated information related to Offerors B and C. At no point in time in the evaluations of offers B or C did the SSEB use, rely on or even consult AI tools during the evaluation of the offerers' proposal. Finally, the assessments and evaluations of all the offerors were based on human review of the proposals and any errors that may have resulted would be attributable solely to human error and not hallucinations.

> [N]either I nor the SSEB used, tested, relied on or even attempted to use AI tools to aid or perform the evaluation of the offerors. I was guided solely by Sections L and M of the solicitation and the application of evaluation criteria against the proposals received. At no point during the SSEB evaluations, did AI tools aid, contribute to or assist in the performance of evaluations for any of the offeror's proposals.

Exhibit A, ¶ 4.

Despite Mr. ▆ and Mr. ▆ unambiguous representations, made under penalty of perjury, TRAX insists that "[t]he weakness assigned to TRAX's proposal . . . bears many of the hallmarks of an AI hallucination[.]" ECF No. 28, p. 7. Moreover, during the Government Accountability Office (GAO) proceedings the Government transparently conceded that it

---

[3] While the "Basis for Contract Award" attachment to the RFP (Attachment 0010, Section M3.1) addressed the use of Artificial Intelligence (AI) in proposal evaluation, it is clear from both Mr. ▆ and Mr. ▆ statements that FAST TRACK was not at all involved in this solicitation's evaluations. *See* AR1833 (M.3.1.1 and M.3.1.2).

errantly assigned TRAX a weakness under the solicitation's continuity of operations subfactor. AR 9061. The GAO, nonetheless, found the assignment of that weakness did not competitively prejudice TRAX. *Id.*

Undeterred, TRAX persists in seeking evidence of something that dispositively did not happen and did not affect the outcome of the evaluation of the RFPs.

## STANDARD OF REVIEW

### I.     The Contents of the Administrative Record

Bid protests in this Court are subject to the Administrative Procedure Act (APA) standard of review. 28 U.S.C. § 1491(b)(4). Thus, review is based upon an administrative record. *See* 5 U.S.C. § 706; *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) (holding that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court") (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). "The purpose of limiting judicial review to the record actually before the agency is to guard against courts using new evidence to 'convert the 'arbitrary and capricious' standard into effectively de novo review.'" *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1331 (Fed. Cir. 2018) (quoting *Axiom*, 564 F.3d at 1380).

The administrative record generally includes "all the material that was developed and considered by the agency in making its decision." *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 339, 342 (1997) (citation omitted); *see also, e.g., Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000) (describing the administrative record in a post-award protest as "the record before the decision maker at the time of the final award"). The record includes all documents that were "directly or indirectly considered by the agency decisionmakers[.]" *Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 168-69 (2011) (*Comint*) (citation omitted).

4

The scope of the administrative record is dictated by the proper scope of administrative review. It is settled law that agency action should be judged based on the agency's stated reasons for its decision. *See, e.g., Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."); *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943) (noting that the Court would confine its review "to a judgment upon the validity of the grounds upon which the Commission itself based its action").

## II.    Standards for Completing the Administrative Record and Supplementing the Administrative Record

The Court of Federal Claims distinguishes between efforts to "amend," "correct," or "complete" the record, and efforts to "supplement" the record with extra-record evidence that was not before the decision-maker at the time of the challenged decision. *Comint*, 100 Fed. Cl. at 168; *Linc Gov't Servs., LLC v. United States*, 108 Fed. Cl. 473, 486 n.6 (2012); *see also Arkray USA Inc. v. United States*, No. 14-233C, 2014 WL 2905127, at *4 (Fed. Cl. June 26, 2014) (requiring the Government to complete the record with pre-award emails and handwritten notes as well as a post-award agenda and handwritten notes pertaining to the protest). If the agency has erroneously excluded documentation from the record that the agency considered, the proper course is for the Government to correct the record to include those documents. *Smith v. United States*, 114 Fed. Cl. 691, 695 (2014).

In contrast, "supplementation" of the administrative record, as properly defined, occurs when the court accepts evidence that was not a part of the administrative record before the agency for the purpose of deciding the merits of the protest. The standard for supplementation of the administrative record is set forth in the Federal Circuit's decision in *Axiom*. In *Axiom*, 564 F.3d at 1380, the Federal Circuit explained that "supplementation of the record should be limited

5

to cases in which the omission of extra-record evidence precludes effective judicial review." And the Court is "required to explain why the evidence omitted from the record frustrated judicial review as to the ultimate question of whether the award of a [] contract [] was arbitrary and capricious." *AgustaWestland*, 880 F.3d at 1331 (citing *Axiom*, 564 F.3d at 1379-80).

## ARGUMENT

At the center of the law controlling Administrative Records is *Axiom v. United States*. *See* Standard of Review, *supra*. TRAX's motion ignores this controlling precedent.

### I.   TRAX Misunderstands the Case Law Controlling Completing the Administrative Record

Instead of arguing why it is entitled to the AI tools output under 5 U.S.C. § 706 and *Axiom*, TRAX relies primarily on its misunderstandings of *Competitive Innovations, LLC v. United States* (*Competitive Innovations*) and *Oak Grove Technologies, LLC v. United States* (*Oak Grove*) to conclude that: (1) anything *generated* during a proposal evaluation decision-making process (*Competitive Innovations*); and (2) anything "relevant to *the process of making the agency's decision*" are required to be in the administrative record . *See* ECF 28, p. 1 (citing *Competitive Innovations*, 175 Fed. Cl. 296, 303 (2025) ("A motion to complete the administrative record seeks to add materials that are relevant to the challenged agency decision and that were considered by the agency in reaching its decision or generated during the decision-making process."); ECF 28, p. 2 (citing *Oak Grove*, 156 Fed. Cl. 594, 600 (2021) ("'A proper administrative record 'is not limited to documents relevant only to the merits of the agency's decision' but also 'includes documents and materials relevant *to the process* of making the agency's decision.[4]'")). TRAX's conclusions are wrong.

---

[4] TRAX's citation states that *"to the process of making the agency's decision"* was emphasized in *Oak Grove*, however, only *"to the process"* was emphasized by the *Oak Grove* Court. *See Oak Grove,* 156 Fed. Cl. at 600.

████████████████████████████

### A.   The Term "or generated" found in *Competitive Innovation* Has No Legal Foundation

Tracing back the "or generated" language relied on by TRAX reveals not only that the language is not based on any precedent binding to this Court, but also that the "or generated" language is not based on any precedent, persuasive or otherwise.

Both the "or generated" phrases in *Competitive Innovations* cite to *BHB Ltd. P'ship v. United States*, 147 Fed. Cl. 226, 229 (2020), which uses the "was generated or considered" language citing to *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 494 (2019). In turn, *Poplar Point*, quotes *Arkray USA, Inc. v. United States*, No. 14-233C, 2014 WL 2905127, at *4-*5 (Fed. Cl. Apr. 28, 2014), which also uses the "were generated or considered" language. Thereafter, *Arkray USA* cites *Comint*, 100 Fed. Cl. 159, 167 (2011), which also uses the "materials generated or considered" language. Thus, from *Competitive Innovations* (2025) to *BHB* (2020) to *Poplar Point* (2019) to *Arkray USA* (2014) to *Comint* (2011), there is a chain of Court of Federal Claims cases using the "or generated" language, suggesting at least persuasive authority that the "or generated" language matters.

This suggestion, however, is wrong. *NEQ, LLC v. United States,* 86 Fed. Cl. 592, 593 (2009), the foundation of these cases and relied on by *Comint*, breaks that chain, and with it, eliminates any persuasive value of the "or generated" language in *Competitive Innovations* and its precursors. In *NEQ*, a post-award protest case, like this, the court ordered the Government to produce two electronic messages that "were before the agency when it [the agency] rendered its award decision."[5] *Id.* And in the sentence immediately thereafter, *NEQ* states:

---

[5] It is not clear from the opinion whether the written communications in *NEQ* were "between the contracting officer and the technical evaluation panel" or "between the agency and the awardee[,]" but it is clear the communications the court required the Government to produce "were before the agency when it rendered its award decision." *NEQ, LLC*, 86 Fed. Cl. at 592-93.

███████████████████████████████████

> Plaintiff's remaining requests, however, *seek to supplement the record with materials that were not considered by the agency in rendering its substantive award decision herein.* In seeking the inclusion of those materials, plaintiff invokes several opinions that seem to relax unduly the standard for supplementing the record—so much so, if the court reads them correctly, as to "risk[ ] converting arbitrary and capricious review into a subtle form of *de novo* review."

*Id.* (emphasis added) (quoting *ARINC Eng'g Servs., LLC v. United States,* 77 Fed.Cl. 196, 201 (2007)).  Thus, *NEQ* – and thereby *Competitive Innovation* – does not require including all material "generated" during the review of proposals, without consideration of whether it was before the agency decision makers.  Instead, *NEQ* – like the *Axiom* precedent controlling this Court – is only a basis for including material generated and "actually before the agency[.]"  *See Axiom*, 564 F.3d at 1380 (limiting review to the record actually before the agency).

In conclusion, not only is the "generated *or* considered" language first used in *Comint v. United States*[6] and carried through to *Competitive Innovations*[7] inconsistent with controlling precedent, *Axiom*, its foundation is spurious to non-existent.  *See NEQ*, 86 Fed. Cl. at 592.

**B.**   ***Competitive Innovations & Oak Grove*, By Their Own Terms, Do Not Require the Government to Complete the Record With the AI Tool Outputs**

**1.**   ***Competitive Innovations* Does Not Require the Government to Complete the Record With the AI Tool Outputs**

*Competitive Innovations* states: "A motion to complete the administrative record seeks to add materials that are relevant to the challenged agency decision *and that* were considered by the

---

[6] "Admission of new evidence into an agency-assembled record is a separate and distinct issue from completing the record through incorporation of materials *generated or considered* by the agency itself during the procurement process." *Comint*, 100 Fed. Cl. at 167.

[7] "A motion to complete the administrative record seeks to add materials that are relevant to the challenged agency decision and that were considered by the agency in reaching its decision or generated during the decision-making process." *Competitive Innovations*, 175 Fed. Cl. at 303.

8

agency in reaching its decision *or* generated during the decision-making process." 175 Fed. Cl. at 303 (emphasis added). TRAX makes much of the fact that *Competitive Innovations* "standard is disjunctive[,]" seemingly overlooking the fact that *Competitive Innovation*'s standard is conjunctive[8] before it is disjunctive. *See id.* Mapped out, the test requires:

> 1) "[M]aterials that are relevant to the agency decision" *and*;
>
> 2) "were considered by the agency in reaching its decision *or* generated during the decision-making process."

*Id.* (bold and italics added).[9] Thus, the "and" before the "or" makes the test conjunctive before the test is disjunctive. Stated simply, per *Competitive Innovation*, material that is requested to complete the administrative record *must first be* "relevant to the agency decision."[10] Here, the AI outputs TRAX requests fail to meet the first prong of the conjunctive test because they are entirely irrelevant to the agency decision. *See* Exhibit A, ¶ 4; Exhibit B, ¶ 5. TRAX does not attempt to argue that the requested AI outputs are relevant to the agency's decision. *See* ECF 28. Instead, TRAX skips step one of the conjunctive test to argue the AI outputs "are relevant to the 'process' by which the Army made its decision," before making a second, legally irrelevant argument, that the AI outputs are relevant to TRAX's claims. ECF 28 at 2; *id.* at 5 (stating "the

---

[8] "Because this is a *conjunctive test*, failure to prove even one of these elements precludes a showing of trade dress infringement. Therefore, the defendant can secure a summary judgment of noninfringement by demonstrating that the plaintiff cannot show any element of the cause of action." *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1326 (Fed. Cir. 1999) (emphasis added).

[9] The Government is not endorsing *Competitive Innovations* as the proper test for determining whether materials belong in the administrative record, *see* Argument, I.A, only evaluating what *Competitive Innovations* purports to require.

[10] After meeting the relevancy requirement, the materials can *then* be *either* "considered by the agency in reaching its decision" *or* "generated during the decision-making process." *Competitive Innovations*, 175 Fed. Cl. at 303.

9

AI Documents are directly relevant to TRAX's claims" without any citation to case law on why that matters).

While TRAX can be excused for not realizing the "or generated" language in *Competitive Innovations* is legally unfounded, *see* I.A. *supra*, TRAX cannot skip step one of the test it is advocating, the step requiring the materials to be "relevant to the agency decision." *See Competitive Innovations*, 175 Fed. Cl. at 303.

### 2. *Oak Grove* Does Not Require the Government to Complete the Record With the AI Tool Outputs

*Oak Grove* states: "A proper administrative record 'is not limited to documents relevant only to the merits of the agency's decision' but also 'includes documents and materials relevant to *the process of* making the agency's decision.'" 156 Fed. Cl. at 600 (emphasis original).[11]

TRAX's motion does not, and cannot, explain how the AI outputs TRAX requests were "relevant to *the process of* making the agency's decision." *See id.*; ECF 28. Per TRAX, "all that matters is that [the AI outputs] document part of the process that the Army used to make that award decision and reflect the information that was before the Army as it made that decision." ECF 28 at 4. TRAX does not explain how the AI outputs "document part of the process that the Army used to make that award decision" given the evaluation for Offeror A (who was not TRAX or SRS) – and the only AI output the members of the SSEB saw – was complete at the time the SSEB members saw the Offeror A AI output.[12] *See* Exhibit A, ¶ 4; Exhibit B, ¶ 5. Nor does

---

[11] In *Oak Grove*, unlike this case, the two documents in question were known to the agency personnel and were included in the administrative record at the GAO protest. *Oak Grove*, 156 Fed. Cl. at 603. Here, the documents in question were specifically sequestered so as not to affect the agency's decision. *See* Exhibit A, ¶ 4; Exhibit B, ¶ 5.

[12] TRAX also does not explain its allegation that the Army decided not to use the AI outputs "*after* reviewing and considering those documents" when the SSEB was already done its evaluation when it first became aware of the AI outputs. *See* ECF 28 at 3; Exhibit A, ¶ 4.

TRAX explain how the AI outputs "reflect the information that was before the Army as it made that decision" given the SSEB never saw the AI outputs for TRAX (Offeror B) or SRS (Offeror C). *Id.*; ECF No. 28 at 2. Simply, TRAX cannot explain because the relevant decision-making process – to the extent Offeror A's (███) evaluation is somehow relevant to TRAX's claims – was over when the SSEB saw the AI output. *See* Exhibit A, ¶ 4; Exhibit B, ¶ 5.

TRAX's allegation that the AI outputs were "relevant to *the process of* making the agency's decision" cannot rise to the level of conclusory, because TRAX's allegation is impossible. Given when the SSEB saw the AI outputs, and which AI outputs the SSEB saw, it is impossible the AI outputs were relevant to the decision-making process.

## II.    The AI Outputs Unnecessarily Supplement the Administrative Record, They Do Not Complete It

TRAX frames its motion as an attempt to complete the administrative record when it is in fact a motion to supplement the administrative record. Indeed, nowhere in its motion does TRAX acknowledge or consider the distinction between completing and supplementing the record. *See* ECF 28. TRAX ignores this analysis because it is dispositive. The AI output TRAX seeks to add to the administrative record were not developed and considered by the SSEB in making its decision and were not before the decision maker at the time of the final award, thus, the AI output is necessarily supplemental.[13] *See AgustaWestland*, 880 F.3d at 1331 (limiting judicial review to the record actually before the agency); *see also, e.g., Cubic Applications, Inc.*, 37 Fed. Cl. at 342; *Advanced Data Concepts, Inc.*, 216 F.3d at 1057.

---

[13] Assuming, arguendo, these AI outputs were even considered by the decision makers – which they were not – they would nonetheless be pre-decisional, and therefore properly not part of the administrative record. *See Ad Hoc Metals Coalition v. Whitman*, 227 F. Supp. 2d 132, 143 (D.D.C. 2002) ("Judicial review of agency action should be based on an agency's stated justifications, not the predecisional process that led up to the final, articulated decision.").

████████████                                    ████████

Finally, this Court is "required to explain why the evidence omitted from the record frustrated judicial review as to the ultimate question of whether [the agency action] was arbitrary and capricious" and without such an explanation it is "an abuse of discretion to supplement the administrative record" or to "rely[ ] on the supplemental evidence to reach [a] decision." *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1328, 1332 (Fed. Cir. 2018); *accord Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009) ("[T]he trial court abused its discretion in this case" by failing "to make the required threshold determination of whether additional evidence was necessary."). TRAX has no argument as to how this Court's judicial review will be frustrated by the absence of three documents that were uninvolved in the Army's procurement evaluation.

## CONCLUSION

For these reasons, the Court should deny TRAX's motion to complete the administrative record.

June 26, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

OF Counsel:

JOHN C. DEGNAN
Senior Trial Attorney, Team I
MAJ JONATHAN S. DEMILLE
Trial Attorney, Team I
Contract Litigation & Intellectual Property
Division (KLIP)
Office of the General Counsel, Department of
the Army

SUSAN D. DENLEY
Attorney-Advisor (Contracts)
418th Contracting Support Brigade
Mission and Installation Contracting
Command

DOUGLAS K. MICKLE
Acting Deputy Director

/s/ Daniel A. Hoffman
DANIEL A. HOFFMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-0547
E-mail: Daniel.A.Hoffman@usdoj.gov