**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

TRAX INTERNATIONAL CORPORATION )
)
)
Plaintiff, )
)
)
v. )
)
THE UNITED STATES, )
)
Defendant, )
and )
)
)
SOUTHWEST RANGE SERVICES, LLC )
)
Defendant-Intervenor. )
)

Case No. 26-796
Judge Carolyn N. Lerner

**TRAX'S REPLY IN SUPPORT OF ITS MOTION TO**
**COMPLETE THE ADMINISTRATIVE RECORD**

Plaintiff, TRAX International Corporation ("TRAX") respectfully submits this Reply in Support of its Motion to Complete the Administrative Record. There is no dispute that the Government excluded documents that were generated during the evaluation and award process. And neither the Government nor Defendant-Intervenor Southwest Range Service, LLC ("SRS") offers any persuasive basis for withholding those materials from the record before the Court. Because judicial review must be conducted on the basis of the complete record before the agency, and because the missing documents are relevant to the issues raised in this protest, the Court should grant Plaintiff's motion.

A.    **The Agency Fed Proposals for This Procurement Into an AI Tool, and Generated Reports as Outputs, and Briefed the SSEB on the Outputs for One Offeror.**

The Government refuses to list or describe each of the three documents that it has excluded from the record. The Government acknowledges that one of the three documents is the "output"

of an AI tool that the Government used to perform an assessment of one proposal submitted in response to the RFP.  According to the June 26, 2026 Declaration submitted by Procurement Analyst ███████, Mr. ███ "inputted" the proposal submitted by a third offeror (Offeror A/███) "into the AI tool and presented the AI output to the SSEB." ECF No. 32, Gov't Resp., Ex. B ¶ 5.  Mr. ███ further states that he "did not provide or share with the SSEB members information related to any other offeror, other than Offeror A – ████." *Id.* Similarly, the June 16, 2026 Declaration submitted by Source Selection Evaluation Board ("SSEB") Chairperson ██████████ confirms that the entire SSEB convened to review the results of the assessment of Offeror A. ).  ECF No. 32, Ex. A ¶ 4.  Mr. ████ states that he and the SSEB did not review the outputs for Offerors B (TRAX) and C (Defendant-Intervenor Southwest Range Services, LLC).

The Government, however, acknowledges that there are *three* documents that have been excluded from the record.  ECF No. 32 at 12.  And the Declarations of Messrs. ███ and ███ appear to acknowledge that AI outputs were generated for each offeror—although they deny that those outputs were presented to the SSEB, they do not deny that AI outputs for TRAX and SRS were generated in the same manner as the AI output for Offeror A.  Accordingly, there is no real dispute that the Army used an AI tool to perform an evaluation of the proposals.  The only dispute is the extent to which that AI evaluation impacted the ultimate award decision.  That dispute, however, goes to the merits of this litigation—whether the record supports the reasonableness of the Army's award decision—not whether these documents should be part of the record in the first instance.

"[A]n agency may not exclude information merely on the grounds that it did not rely upon the excluded information when reaching a final decision when there was evidence that the information was, in fact, reviewed." *Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed.

Cl. 159, 168 (2011). The AI outputs were "generated" by the Army based on proposals submitted in this procurement and reflect the AI tool's assessment of the proposals under the RFP for this procurement. *Competitive Innovations, LLC v. United States*, 175 Fed. Cl. 296, 303 (2025). Whatever weight or further consideration the SSEB decided to give these outputs after meeting in person to review one of them, the outputs are relevant to the "process" by which the Army made its decision. *Oak Grove Techs., LLC v. United States*, 156 Fed. Cl. 594, 600 (2021). The outputs were documents that were generated specifically to reflect the comparative merits of the proposals received in response to the RFP. The record is incomplete unless they are added.

**B.      Defendants Misconstrue the Test for Completion.**

**1.      The Government Mischaracterizes Plaintiff's Request as One for Supplementation.**

The Government incorrectly argues that TRAX seeks to supplement the record. ECF No. 32, Gov't Resp. at 5-6, 11-12. In so doing, the Government seeks to apply a more exacting standard that it argues TRAX does not meet. *Id.*; *see CAN Softtech, Inc. v. United States*, 173 Fed. Cl. 480, 484 (2024), *recons. denied*, 174 Fed. Cl. 412 (2024) ("To supplement, plaintiffs must make a higher showing: that the Court's consideration of extra-record evidence is necessary to effectuate meaningful judicial review."). But supplementation is "limited to cases in which 'the omission of *extra-record* evidence precludes effective judicial review.'" *Smith v. United States*, 114 Fed. Cl. 691, 695-96 (2014), *aff'd*, 611 F. App'x 1000 (Fed. Cir. 2015) (emphasis added) (quoting *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009)). As the Court has stated, "reliance on *Axiom*"—*i.e.*, caselaw governing supplementation of the record—is "misplaced where the plaintiff merely seeks to complete the administrative record before the reviewing court with

documents that were before the agency at the time of its decision." *Id.* at 696; *see also Comint Sys.*, 100 Fed. Cl. at 167.

The AI outputs are not "extra-record evidence"; they were generated for the SSEB's review, for this specific procurement, and, in fact, were reviewed by the SSEB. *See Smith*, 114 Fed. Cl. at 697-98 (granting Plaintiff's motion to supplement, which the court reviewed under a motion to complete standard when the documents sought were "not extra-record evidence," "[r]ather the four-page document was part of the administrative record of proceedings before the agency at the time it made its decision and is relevant to the court's review in this case"); *see also Comint Sys.*, 100 Fed. Cl. at 168.[1]  TRAX's motion to complete the record is just that: a motion to complete, not supplement, the record.

### 2.      Defendants Ask the Court To Abandon a Long-Standing Test.

Defendants next try to convince the Court that the standard for record completion is not what the Court says it is.  The Court has repeatedly stated that the presumption that the record is complete "may be rebutted" with clear evidence of material "generated or considered by the agency but excluded from the record." *See* ECF No. 32, Govt Resp. at 7; *Competitive Innovations*, 175 Fed. Cl. at 303.  But the Government would have this Court read "or generated" out of the standard.

---

[1] Even if TRAX's motion could properly be cast as a motion to supplement, and it cannot, TRAX has met the requirements for supplementation.  The record here *does* "frustrate[] judicial review as to the ultimate question of whether the … [award] was arbitrary and capricious." *Competitive Innovations*, 175 Fed. Cl. at 303 (quoting *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1332 (Fed. Cir. 2018)).  This procurement suggests multiple instances of AI hallucinations, from the misassigned of a weakness to inaccurate citations.  The AI-generated outputs that the Government admits exist are necessary for effective judicial review so that the Court can meaningfully review the extent to which the Army's use of AI impacted the Army's evaluation findings and source selection decision.

The Government first argues that *NEQ, LLC v United States*, 86 Fed. Cl. 592 (2009) "eliminates any persuasive value of the 'or generated' language in *Competitive Innovations* and its precursors" such that the only relevant question is whether the agency considered the information. ECF No. 32, Gov't Resp. at 7. That is simply not the case. *Competitive Innovations* and the other cases cited by TRAX and acknowledged by the Government post-date *NEQ*. And in any event, *NEQ* does not bear the weight the Government places on it. In *NEQ*, the Court ordered the Government to produce two emails the Government advised were responsive to the protester's request for all written communications (i) between the contracting officer and the technical evaluation panel regarding corrective action; and (ii) between the agency and the awardee during a specific timeframe. The Court "view[ed] adding the two electronic messages in question as not supplementing the administrative record, *per se,* but merely as ensuring the completeness of the record." *Id.* at 593. The Court said that this is "particularly so" as the emails were before the agency, but that fact was not dispositive. *Id.*

The bulk of the requests that the Court in *NEQ* denied were far afield from any records created during the course of evaluation and thus have no persuasive value here. In addition to the emails noted above, protester sought to supplement the record with (i) the source selection decision from a completely separate procurement, and (ii) an affidavit by NEQ's vice president of operations providing information designed to rebut the agency's view of its needs. The Court denied these requests as irrelevant and well outside the materials considered by the agency in making award. *See id.* at 593-95. Here, by contrast, the AI outputs at issue were generated in this procurement, by the agency, and were reviewed by the SSEB; the *NEQ* Court's denial of these separate requests has no bearing on this case.

The Government next attempts to shift focus from the unavoidable fact that the AI outputs were "generated" by the Army during the evaluation process by arguing that TRAX "does not attempt to argue that the requested AI outputs are relevant to the agency decision." *See* Govt. Response at 9. This also is not true. TRAX made clear throughout its Motion that the outputs are relevant because they were generated during the evaluation period, relate to the Army's process and procedures and are otherwise relevant given the concerning errors in the evaluation. *See* TRAX Motion at 2-3 (explaining relevance to evaluation and process of making decision); *id.* at 4-5 (explaining in detail the relationship between the AI outputs, the SSEB's review and deliberation, and ultimately the agency's decision-making process); *see also Comint Sys.*, 100 Fed. Cl. at 168-69 (finding the "current record incomplete" when it was silent on issues concerning the agency's "procurement procedures" *as well as* those concerning its "decision-making process").

For its part, SRS argues that TRAX misconstrues the Court's holding in *BHB Ltd. P'ship v. United States,* 147 Fed. Cl. 226 (2020). SRS insists that *BHB* stands for the principle that completion is only proper where the document at issue was "before the agency when it made its decision." ECF No. 30, SRS Resp. at 6 (quoting *BHS*, 147 Fed. Cl. at 231, for the idea that the "primary focus" of the court's review is material before the agency). But as SRS acknowledges, the Court in *BHB* explicitly allows completion with documents generated by the agency in the course of the procurement. *BHB*, 147 Fed. Cl. at 229 ("But where plaintiff presents clear evidence of material that was generated or considered by the agency but excluded from the record, courts may order completion of the record."); *see* SRS Response at 6 (acknowledging the same). In fact, in describing the "focus" of an agency's record review, *BHB* relies on a passage in *Comint* confirming that the record may be completed with records "generated by" an agency "during the procurement process." *BHB*, 147 Fed. Cl. at 229 (citing *Comint*, 100 Fed. Cl. at 167, which, in

6

granting the request to complete, stated "Plaintiffs, by seeking to incorporate into the record materials that were *generated by the WHS during the procurement process* or considered by it as part of its overall decisionmaking, do not seek to admit 'new' or 'extra-record' evidence") (emphasis added)).

*BHB* supports TRAX's position. Although the Court denied the plaintiff's motion to complete, it did so because the plaintiff failed to provide any evidence that documents were missing. *See BHB*, 147 Fed. Cl. at 230 ("Without more, a reference in a single letter or email is insufficient to rebut the presumption of completeness."). Here, by contrast, TRAX more than meets its evidentiary burden. There is no dispute that the Government used AI to perform an assessment of the proposals, and no dispute that the SSEB convened to review the results of one such assessment. *See* Ex. 1 ¶ 4 (Mr. ███ Declaration). This is more than a "bare assertion that there must be other documents." *Competitive Innovations*, 175 Fed. Cl. at 307 (quoting *Rotair Aerospace Corp. v. United States,* 167 Fed. Cl. 571, 576 (2023)).

SRS incorrectly asserts *Oak Grove* "differs materially" from the issue before this Court because *Oak Grove* involved "formal procurement documents relevant to the issues before the court." ECF No. 30, SRS Resp. at 6. Nowhere in this Court's precedent does completion rest on the type of document generated, let alone the "formality" of such document; this too is a red herring. SRS also argues that the Department of Justice ("DOJ") Guide referenced in *Oak Grove* "contradicts TRAX's position." *Id.* at 7. It does not. The DOJ guidance cited by the Court specifically speaks to the extent to which documents generated by the agency and/or were available to decision makers are required to be in the record:

> Critically, the Justice Department advises agencies to include in the record "documents and materials" (1) whether they "support or do not support the

final agency decision," (2) that either "were before or available to the decision-making office at the time the decision was made," and (3) that "were before the agency at the time of the challenged decision, even if they were not specifically considered by the final agency decision-maker."

*Oak Grove*, 156 Fed. Cl. at 600 (quoting U.S. Dep't of Justice, Env't and Nat. Res. Div., Guidance to Federal Agencies on Compiling the Administrative Record at 2 (Jan. 1999)).

Regardless, the excerpts SRS highlights in its response also support TRAX's position. SRS argues a proper administrative record "'includes documents and materials *relevant to the process of* making the agency's decision.'" ECF No. 30, SRS Resp. at 7 (quoting *Oak Grove*, 156 Fed. Cl. at 600) (italics in *Oak Grove*; underline added by SRS). SRS emphasizes "making the agency's decision," but ignores the Court's confirmation that documents relevant to the *process* of making that decision should be included in the record. Similarly, SRS quotes the DOJ guide's mention of documents and materials "directly or indirectly considered by the agency decision maker in making the challenged decision," again emphasizing "making the . . . decision." *Id.* at 7. But SRS ignores DOJ's acknowledgment that materials can be considered directly *or indirectly*, e.g., as here, where the SSEB clearly reviewed the AI outputs. Whether the Army relied on or decided not to rely on those outputs is of no importance; they were generated and reviewed by the Army in the course of the evaluation, and should thus be included in the record.

Finally, SRS suggests that TRAX is asking the Court to reach into the "universe of documents generated at any point in the evaluation process" in order to achieve a complete record. *Id.* at 8. TRAX makes no such request. TRAX requests documents generated in the course of this procurement relevant to this protest. Nor is TRAX attacking the "veracity and good faith of SSEB Chair ██████████ and the Agency without evidence." *See id.* at 11. TRAX is merely seeking a complete record from which this Court can conduct meaningful judicial review.

For the foregoing reasons, and those outlined in its Motion to Complete the Administrative Record, TRAX respectfully requests that the Court grant its motion and order the Government to complete the Administrative Record by producing:

1.    All documents generated by or for any artificial intelligence ("AI") tools used by the Army to evaluate or compare proposals received in response to Request for Proposals No. W51EW725RA003 (the "RFP"), including the "outputs" for each offeror of the "AI tool" that is referenced in Paragraph 4 of the June 16, 2026 Declaration of █████ ████.

2.    All documents memorializing the Army's consideration of any outputs from any AI tool used to evaluate or compare proposals under the RFP, including all documents memorializing the Army's determination that those outputs were not usable.

Respectfully Submitted,

s/ Daniel P. Graham
Daniel P. Graham
MCDERMOTT WILL & SCHULTE LLP
500 North Capitol Street, N.W.
Washington, DC 20001
202-756-8890
dgraham@mcdermottlaw.com

*Lead Attorney for Plaintiff*
*TRAX International Corporation*

*Of Counsel:*
Tara L. Ward
Emily E. Fallin
MCDERMOTT WILL & SCHULTE LLP

Date:  July 2, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2026, I caused a copy of Plaintiff's Reply in Support of Its

Motion to Complete the Administrative Record on the following:

Daniel Hoffman
United States Department of Justice
Commercial Litigation Branch
Civil Division
PO Box 480
Ben Franklin Station
Washington, D.C. 20044
E-mail: daniel.a.hoffman@usdoj.gov
*Counsel for Defendant*

Craig A Holman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Email: Craig.Holman@arnoldporter.com
*Counsel for Defendant-Intervenor*

Dated: July 2, 2026

s/ Daniel P. Graham
Daniel P. Graham
MCDERMOTT WILL & SCHULTE LLP
500 North Capitol Street, N.W.
Washington, DC 20001
(202) 756-8890
dgraham@mcdermottlaw.com

*Lead Attorney for Plaintiff TRAX International Corporation*